PATRICK M. DUGGAN
Senior Trial Attorney
Environmental Crimes Section
U.S. Department of Justice
150 M ST. NE,
Washington, D.C. 20002
Phone: (202) 598-9569
Fax: (202) 514-8865
Email: Patrick.Duggan@usdoj.gov

SARAH M. BROWN
Trial Attorney
Environmental Crimes Section
U.S. Department of Justice
150 M ST. NE,
Washington, D.C. 20002
Phone: (202) 532-3144
Fax: (202) 514-8865
Email: Sarah.Brown2@usdoj.gov

JEFFREY K. STARNES
Assistant U.S. Attorney
U.S. Attorney's Office
P.O. Box 3447
Great Falls, MT 59403
119 First Ave. N., Suite 300
Great Falls, MT  59401
Phone: (406) 761-7715
Fax:  (406) 453-9973
Email:  jeff.starnes@usdoj.gov

ATTORNEYS FOR PLAINTIFF
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ARTHUR "JACK" SCHUBARTH,<br><br>Defendant. | CR 24-06-GF-BMM<br><br>AMENDED OFFER OF PROOF |

1

## PLEA AGREEMENT

The parties have entered into a plea agreement pursuant to Rules 11(c)(1)(A) and (B), *Federal Rules of Criminal Procedure.* The defendant agrees to plead guilty to the Information, to be responsible for complete restitution to the victims, if any, and to a conditional waiver of appellate rights. Count One charges Conspiracy to violate the Lacey Act, 18 U.S.C. § 371 and Count Two charges Lacey Act Trafficking, 16 U.S.C. § 3372(a)(2)(a) and 3373(d)(1)(B).

In exchange for the defendant's guilty plea, the United States agrees not to prosecute the defendant for any additional offenses known to it as of the acceptance of the agreement based upon evidence in its possession, and that arise out of the conduct giving rise to this investigation, to make certain recommendations as to the calculation of the defendant's guideline sentence, and to recommend at sentencing a sentence at the low end of the U.S. Sentencing Guidelines.

The plea agreement represents, in the government's view, the final and the most favorable offer extended to the defendant in this case. *See Missouri v. Frye*, 566 U.S. 134, 145-46 (2012).

## PENALTIES

Conspiracy, as charged in Count One, is a Class D felony, and carries a maximum penalty of up to five years imprisonment, a fine of $250,000 or twice the

gross gain or loss, one year of supervised release, and a $100 special assessment.

Lacey Act Trafficking, as charged in Count Two, is a Class D felony, and carries a maximum penalty of up to five years imprisonment, a fine of $250,000 or twice the gross gain or loss, one year of supervised release, and a $100 special assessment.

## ELEMENTS

To prove the defendant guilty of Conspiracy in violation of 18 U.S.C. § 371 as charged in Count 1, the United States must prove the following elements beyond a reasonable doubt:

- <u>First</u>, that two or more persons agreed to commit an offense against the United States, namely, the trafficking and false labeling provisions of the Lacey Act;

- <u>Second</u>, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish the object;

- <u>Third</u>, at least one of the members of the conspiracy performed at least one of the overt acts for the purpose of carrying out the conspiracy.

To prove the defendant guilty of Lacey Act Trafficking in violation of 16 U.S.C. §§ 3372(a)(2)(A) and 3373(d)(1)(B) as charged in Count 2, the United States must prove the following elements beyond a reasonable doubt:

- <u>First</u>, the defendant knowingly acquired, received, purchased, sold and transported wildlife, namely, wild-harvested bighorn sheep parts, in interstate commerce.

- <u>Second</u>, the defendant knew that the wildlife, had been taken, possessed, transported, and sold in violation of Montana law and regulation;

- <u>Third</u>, the market value of the wildlife was greater than $350;

- <u>Fourth</u>, the defendant did knowingly engage in conduct that involved the sale, purchase, and offer to sell and purchase, the wildlife.

## ANTICIPATED EVIDENCE[1]

If this case were tried in United States District Court, the United States would enter the following evidence in order to prove Count One beyond a reasonable doubt:

Defendant Jack Schubarth owned and operated an alternative livestock facility in Montana, also known as a game farm, operating under the name "Sun River Enterprises, LLC" ("Schubarth Ranch"). Marco Polo argali ("argali") sheep are a species of sheep native to high elevations in the Pamir mountain region of Central Asia. Marco Polo argali are internationally protected under the Convention on International Trade in Endangered Species of Wild Fauna and Flora and domestically protected under the federal Endangered Species Act.

With respect to Count 1, Conspiracy, the United States would prove that beginning on a date no later than January 25, 2013, and continuing through at least

---

[1] The United States notes that the statement of evidence in this offer of proof does not reflect all evidence that the United States possesses against the defendant, but only a summary sufficient to ensure the defendant's guilty plea is provident. The United States reserves the right to present additional evidence against the defendant if this case were to proceed to trial.

4

October 2022, at the Schubarth Ranch and elsewhere, Defendant Schubarth developed and implemented, with his coconspirators, a plan to create a new, larger, more robust and more valuable hybrid sheep that could be sold to captive hunting operations, also known as game ranches or shooting preserves. In order to implement the scheme, Schubarth engaged a third party to create a cloned argali sheep from argali parts that had been hunted in the wild and illegally brought into the United States. Defendant and co-conspirators then performed laparoscopic artificial insemination ("LAP-AI") and other forms of artificial breeding to create larger and more valuable lines of argali sheep. Schubarth and co-conspirators used electronic communications to coordinate the sale and terms of transactions in wildlife, wildlife parts, and offspring; arrange for transport of wildlife in interstate commerce; and discuss false documentation to hide the proper identification of prohibited wildlife.

Defendant Schubarth and his coconspirators completed multiple overt acts in furtherance of the conspiracy, including but not limited to:

- On or about January 25, 2013, Person A entered the United States with biological tissue from a Marco Polo argali sheep that had been hunted in Kyrgyzstan. Person A did not declare the animal parts upon entry, knowing importation of a threatened species violated the federal Engendered Species Act.

- On or about October 6, 2015, Schubarth entered into an "Ovine Cloning Contract" to clone an unspecified number of Marco Polo sheep from the tissue and provided a deposit of $4,200 for the cloning.

5

- On or about May 15, 2017, a pure Marco Polo argali sheep male was born from the cloned embryos, which Schubarth named Montana Mountain King ("MMK"). Schubarth imported MMK to Schubarth Ranch, knowing the species was prohibited in Montana.

- Starting in 2018 at the latest, Schubarth harvested semen from MMK in order to inseminate ewes via LAP-AI to create Marco Polo argali hybrid offspring. On or about November 15, 2018, Person C transported twenty-six prohibited species of sheep from Minnesota to Schubarth Ranch to be artificially inseminated with MMK semen, knowing such species were transported in violation of Montana law.

- On or about May 4, 2019, Person A transported one MMK offspring sheep from Person C's residence in Minnesota to Schubarth Ranch, knowing the species was transported in violation of Montana law.

- On or about November 15, 2019, Person C transported forty-eight prohibited species of ewes from Minnesota to Schubarth Ranch to be artificially inseminated with MMK semen, knowing the species were transported in violation of Montana law.

- On or about July 13, 2020, Schubarth agreed to sell Person D and Person E eleven sheep containing 25% MMK genetics for $13,200 and an offspring of MMK, named "Montana Black Magic" or "MBM" for $10,000.

- On or about July 15, 2020, Person E procured a Texas Animal Health Commission Certificate of Veterinary Inspection for the interstate export of forty-three sheep which were falsely declared as New Mexico Dahl Sheep.

- On or about July 15, 2020, Person D and Person E transported forty-three falsely labeled sheep from Texas to Schubarth Ranch, knowing the true species were prohibited in Montana.

- On or about July 17, 2020, Person E issued Schubarth a $23,000 check to purchase twelve MMK offspring.

- On or about July 17, 2020, Person E procured a Montana Department of Livestock Certificate of Veterinary Inspection showing the transfer of MBM, falsely declared as "Bighorn x," from Schubarth in Montana to Person E in Texas.

- On or about July 17, 2020, Person E procured a Montana Department of Livestock Certificate of Veterinary Inspection in order to transfer eleven MMK offspring, falsely declared as "New Mexico Domestic sheep," to Texas. Schubarth, Person D, and Person E knew the sheep were prohibited in Montana and therefore falsely identified the sheep under the guise they were a legally permitted species of sheep.

With respect to Count 2, Lacey Act Trafficking, the United States would prove that Schubarth's game farm operations also included the purchase, sale, and breeding of wild-sourced Rocky Mountain bighorn sheep parts. Defendant Schubarth solicited hunting guides and hunters in Montana to sell him testicles of recently killed trophy-level wild Rocky Mountain bighorn sheep in violation of Montana law. Defendant Schubarth then used the semen from these sheep to breed and sell large bighorn sheep as well as bighorn sheep crossbred with argali.

On or about October 20, 2019, Schubarth bought from a hunting guide Rocky Mountain bighorn sheep testicles that had been harvested in Montana from a recently killed trophy-sized bighorn sheep. Defendant Schubarth paid $400 for the testicles, and he was aware that the testicles were sold in violation of Montana law. Schubarth then extracted semen from the sheep parts and sold the semen to buyers in interstate commerce on or about November 5, 2019.

## CONCLUSION

The United States would have presented the above evidence through the testimony of law enforcement, lay, and expert witnesses, and through the introduction of various exhibits.

DATED this 11th day of March 2024.

| | |
|---|---|
| TODD KIM | JESSE A. LASLOVICH |
| Assistant Attorney General | United States Attorney |
| Environment & Natural Resources Div. | District of Montana |
| | |
| By: *[signature]* | By: */s/ Jeffrey K. Starnes* |
| PATRICK M. DUGGAN | JEFFREY K. STARNES |
| Senior Trial Attorney | Assistant United States Attorney |
| SARAH M. BROWN | |
| Trial Attorney | |
| Environmental Crimes Section | |