**PATRICK M. DUGGAN**
Senior Trial Attorney
Environmental Crimes Section
U.S. Department of Justice
150 M ST. NE,
Washington, D.C. 20002
Phone: (202) 598-9569
Fax: (202) 514-8865
Email: Patrick.Duggan@usdoj.gov

**SARAH M. BROWN**
Trial Attorney
Environmental Crimes Section
U.S. Department of Justice
150 M ST. NE,
Washington, D.C. 20002
Phone: (202) 532-3144
Fax: (202) 514-8865
Email: Sarah.Brown2@usdoj.gov

**JEFFREY K. STARNES**
Assistant U.S. Attorney
U.S. Attorney's Office
P.O. Box 3447
Great Falls, MT 59403
119 First Ave. N., Suite 300
Great Falls, MT  59401
Phone: (406) 761-7715
Fax:  (406) 453-9973
Email:  jeff.starnes@usdoj.gov

**ATTORNEYS FOR PLAINTIFF
UNITED STATES OF AMERICA**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>vs.<br><br>**ARTHUR "JACK" SCHUBARTH,**<br><br>Defendant. | CR 24-00006-GF-BMM<br><br><br>**SENTENCING MEMORANDUM** |

The United States of America, by and through its undersigned counsel, respectfully submits this Sentencing Memorandum in compliance with the Court's order. Doc. 28. Defendant Schubarth pleaded guilty to two counts related to trafficking in protected and prohibited wildlife. His calculated advisory guideline range, before any adjustments, is 24 to 30 months imprisonment based on a total offense level of 17 and a criminal history of I. There are no objections to the PSR. The United States recommends a sentence at the low end of the guideline range.

## BACKGROUND

On March 11, 2024, The United States filed a superseding Information charging Arthur "Jack" Schubarth with two felony crimes related to wildlife trafficking. Doc. 13. Count One, which alleged a conspiracy, was based on Schubarth's agreement with at least five other coconspirators to create and sell a larger, more valuable species of sheep that could be sold to captive hunting facilities. The conspiracy included an agreement to illegally import a Marco Polo argali sheep from Kyrgyzstan, a species which is protected internationally by the Convention on International Trade in Endangered Species of Wild Fauna and Flora (hereinafter "CITES") and domestically by the Endangered Species Act (ESA); to clone, breed, and sell argali sheep; to import, buy, breed, and sell sheep that were prohibited in Montana; and to falsify records related to the transport of prohibited species in and out of Montana, all in violation of the Lacey Act. Count Two charged Schubarth

with violating the Lacey Act by trafficking in wild Rocky Mountain bighorn sheep parts that had been illegally bought and sold in violation of Montana law.

On March 12, 2024, Defendant Schubarth pleaded guilty to the Criminal Information pursuant to a plea agreement with the government (Doc. 15), and the plea was accepted by this Court on April 2, 2024. Doc. 23. The U.S. Probation Office completed a draft presentence report (PSR) on May 22, 2024, and provided all parties with the final PSR on September 25, 2024. Neither party had any objections to the findings in the PSR.

## SENTENCING ANALYSIS

Section 3553(a) of Title 18 of the United States Code directs courts to consider general factors in exercising their sentencing discretion to impose a sentence "sufficient, but not greater than necessary". In this matter, the most relevant factors set forth under 18 U.S.C. § 3533(a) include:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

2. the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

3. to afford adequate deterrence to criminal conduct; and

4. to protect the public from further crimes of the defendant.

In addition, subsection (3) of § 3553(a) requires the Court to consider the kinds of sentences available.

## 3553(a) FACTORS

Application of the 3553(a) sentencing factors to this matter classifies why a guidelines sentence is appropriate.

### Nature and circumstances of the offense

Defendant Schubarth's illegal breeding operation was long-running, widespread, profit-driven, and conducted with full knowledge of the illegality as well as the potential harm to Montana wildlife.

In 2001, Montana citizens voted to amend state law to ban all new game farms, prohibit expansion of existing game farms, outlaw captive hunting on game farms, and eliminate the transfer or sale of existing game farm licenses.  Existing game farms, such as the Schubarth Ranch, were allowed to continue operation so long as the ownership was not transferred or sold and there was no hunting on the farm.

In 2012, Schubarth took the first step in creating larger, more robust sheep that could be sold to out-of-state captive hunting facilities for a premium price.  That year, Schubarth paid for his son to participate in a Marco Polo argali sheep hunt in Kyrgyzstan.  Marco Polo argali (*Ovis ammon polii*) are a species of sheep that live in high elevations of the Pamir Mountains region spanning Afghanistan, Pakistan, Kyrgyzstan, Tajikistan, and China.  Argali sheep are listed as Threatened under the ESA and are internationally protected under Appendix II of CITES.  Because of these protections, the trade and transport in argali sheep is restricted.  Argali sheep

are believed to be the largest species of sheep in the world, regularly weighing more than 300 pounds. Argali horns are the largest of any wild sheep, and argali are one of the species required to complete an "ovis world slam," which includes the successful taking of a number of wild sheep species throughout the world.

Schubarth's son successfully killed an argali on the 2012 trip, and he illegally imported parts of the sheep into the U.S. without declaring the import. The argali parts, however, were not suitable for cloning, and thus Schubarth's son returned to Kyrgyzstan in January 2013. On this trip, Schubarth's son successfully killed an argali and was able to bring back viable tissue from the animal – again, by smuggling the parts into the U.S. without any declarations. With the argali genetic material, Schubarth partnered with a commercial cloning facility to create a genetically pure Marco Polo argali in the United States.

In early 2014, Schubarth petitioned the state of Montana to allow argali sheep into the state. On February 10, 2024, the Montana Department of Fish, Wildlife and Parks denied Schubarth's petition. The denial stated, in part, that argali sheep would remain prohibited based on the potential for disease transmission to native and domestic species and "strong evidence that the species could establish feral populations in Montana as similar species and subspecies have done in other states."

Yet in November 2016, Schubarth received viable argali embryos, and on May 15, 2017, a single, male, genetically pure Marco Polo argali was born on

Schubarth's ranch. Schubarth named the sheep "Montana Mountain King," or MMK.



"MMK" Pictured in December 2023

With MMK on the Schubarth Ranch, Defendant Schubarth was then able to begin a wide-ranging program that included the sale of argali semen, laparoscopically inseminating ewes with argali semen, and the sale of argali offspring to those in the captive hunting industry, primarily in Texas. Schubarth's interstate commerce in sheep required no small number of false statements – clients brought prohibited species of sheep into Montana to be impregnated with argali semen, and Schubarth sold offspring that were illegal in Montana. Thus, the records of interstate movement of animals were falsified to create the appearance that the

animals moving in and out of the state were harmless domestic species.

At the same time, Schubarth was trying to procure the biggest and best genetics from native Rocky Mountain bighorn sheep. Montana bighorns are renowned as the largest in the U.S., and some hunters wait a lifetime to procure a permit through the state lottery that would allow them to target a single Montana bighorn. Of the populations in Montana, the bighorns of the Missouri River Breaks are the most sought after due to their size. Schubarth wanted the Missouri River Breaks genetics, and so he found a way to acquire them: he agreed with hunting guides to purchase the testicles from recently killed trophy-size Montana bighorns. Schubarth knew it was illegal to sell or buy any part of a game animal in Montana and that it is illegal to have animals from wild populations on a game farm. Within hours of a kill, Schubarth communicated with guides regarding the size and quality of a kill, and if the animal was large enough, he would buy the testicles from the guide.

Schubarth's program operated for more than four years, with illegal sales to Alabama, Arkansas, Kansas, Minnesota, Missouri, Nebraska, Ohio, Oregon, South Dakota, Texas, and West Virginia, and many false documents created to allow prohibited species into the state. It was not a spur-of-the-moment or one-off crime. It was a knowing, planned crime that Schubarth undertook despite knowing that his actions were violating state and federal law.

**Seriousness of the offense**

The crimes committed by Defendant Schubarth were serious in part because the ramifications could be devastating and permanent. A single escaped specimen could completely transform the genetic makeup of the bighorn population of Montana. A single interaction between animals could introduce diseases to which wild populations have no immunity. The selective purchase of the biggest and best bighorns has not only caused progressive reduction in the average size Montana's wild bighorns, but the later sale of that semen then commercializes the natural resource that rightly belongs to Montanans.

These concerns are not exaggerated doomsday predictions. Two sheep, which traveled from Texas to the Schubarth Ranch and were then sold from the Schubarth Ranch to Nebraska, died from Johne's disease shortly after arriving in Nebraska. Johne's disease is a contagious, chronic wasting disease that is easily spread between animals directly or through environmental contamination via feces. Pneumonia spread from domestic herds has repeatedly ravaged wild Montana bighorns, with some herds, such as those in the Tendoy mountains, still struggling with an outbreak that started in the 1990s.

Research and population studies show the size of Montana bighorns is decreasing, and recent studies have directly pointed the finger at selective hunting of the biggest specimens. When those trophy-sized rams are removed from the

population so that their semen can be sold to ranches in Texas and elsewhere, Montana loses. Not only does it lose part of its natural bounty, but it loses economically. Outdoor recreation in Montana generates more than $2.5 billion each year.[1] Hunting alone brings in $85 million each year and wildlife viewing yearly brings more than 150,000 people to Montana, significantly contributing to rural communities. When Rocky Mountain bighorns decrease in population and size, opportunities for Montanans decrease with them.

## Respect for the law and just punishment for the offense

Defendant Schubarth was not concerned with violating the law. Not only was he experienced in the game farm industry, but he had communicated directly with Montana officials regarding which species of sheep were prohibited in Montana. He was aware of the prohibitions of having wild genetics on his game farm and knew he could not buy any part of game animals hunted in Montana. Even so, he knowingly violated state and federal laws in the name of his desire to breed and sell a hybridized, larger sheep that would garner more money in captive hunts. In conversations with co-conspirators, he guided them on how to falsify paperwork to evade authorities, and he had conversations over Facebook regarding the need for

---

[1] Outdoor Recreation Economy Measurements, U.S. Bureau of Economic Analysis, available at: https://www.bea.gov/sites/default/files/2023-11/orsa1123.pdf. *See also* Montana's Outdoor Economy, Montana Dep't of Labor & Industry, available at: https://lmi.mt.gov/_docs/Publications/EAG-Articles/EAG-1222_Final.pdf, and Montana: The Economic Contributions of Hunting, Fishing, and Wildlife-Watching on BLM Lands, PEW Charitable Trusts, available at: https://www.pewtrusts.org/-/media/assets/2018/09/economiccontributionsrecreationblm_montana_v1.pdf.

secrecy because of the illegality of his scheme. Defendant Schubarth, while committing these crimes, exhibited no respect for the law.

After being caught, however, Defendant Schubarth has exhibited remorse and has been compliant. He has allowed law enforcement on his property and has provided officials with genetic testing showing which of his animals posed a danger to wild herds and must be quarantined or removed. After MMK was confiscated, Schubarth also assisted authorities in the proper care and maintenance of the animal. Defendant Schubarth has given up, without compensation, the illegal animals he possessed, and the meat from those animals has been donated to Montana families in need. The government recognizes Defendant Schubarth's compliance and assistance in dealing with the illegal animals, which is one reason that the government is recommending a sentence at the low end of the applicable guideline range.

### Deterrence and Public Protection

Defendant Schubarth is unlikely to attempt the same crimes again. The cost and potential legal exposure, combined with his age, makes him unlikely to be a repeat offender. Deterrence, however, is still an important consideration in this case. Other potential offenders must be deterred from similar actions and the public must be protected from those future crimes.

There is no shortage of examples as to the devastating impacts wreaked by

escaped invasive or exotic species. Snakehead fish, believed to have been first introduced in U.S. waters as an unwanted pet, have decimated local fish populations throughout the East Coast. Zebra mussels were inadvertently released in the Great lakes, and they now choke out native species from the Hudson Bay to the Mississippi river. Pigs that escaped from domestic enclosures can now be found in more than half of United States, and escaped Burmese pythons are transforming the Everglades ecosystem. Some actions leading to these problems were careless and some intentional. Yet with a just punishment, this Court can take a step towards averting the next ecological disaster and protect the public from wide-ranging negative consequences.

## **CONCLUSION**

Based on the foregoing and the relevant factors under U.S.S.G. § 3553, the government respectfully submits that a low guideline sentence is appropriate for Defendant Schubarth.

| | |
|---|---|
| TODD KIM | JESSE A. LASLOVICH |
| Assistant Attorney General | United States Attorney |
| Environment & Natural Resources Div. | District of Montana |
| | |
| By: ___/s/ Sarah Brown___ | By: /s/ Jeffrey K. Starnes |
| SARAH M. BROWN | JEFFREY K. STARNES |
| Trial Attorney | Assistant United States Attorney |
| PATRICK M. DUGGAN | |
| Senior Trial Attorney | |
| Environmental Crimes Section | |

## CERTIFICATE OF COMPLIANCE

Pursuant to D. Mont. LR 7.1(d)(2) and CR 47.2, the attached memorandum is proportionately spaced, has a typeface of 14 points or more, and the body contains 2181 words.

/s/ *Sarah M. Brown*
SARAH M. BROWN
Trial Attorney
Environmental Crimes Section